IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF EASTERN PENNSYLVANIA

| | |
|---|---|
| JEREMY BLAIN<br>163 Swopes Valley Road<br>Pine Grove, PA 17963<br><br>        Plaintiff,<br><br>    v.<br><br>RAUSCH CREEK GENERATION, LLC<br>490 West Main Street<br>Tremont , PA 17981<br><br>        Defendant. | CIVIL ACTION NO:<br><br>**COMPLAINT WITH JURY DEMAND** |

## CIVIL ACTION COMPLAINT

Plaintiff Jeremy Blain (hereinafter "Plaintiff") by and through undersigned counsel hereby complains as follows against Rausch Creek Generation, LLC (hereinafter "Defendant").

## INTRODUCTION

1. Plaintiff has initiated this action to redress violations by Defendant of the American's with Disabilities Act ("ADA"), the Pennsylvania Human Relations Act ("PHRA") and the Family Medical Leave Act ("FMLA"). Defendant failed to accommodate Plaintiff. Furthermore, Defendant fired Plaintiff due to his disabilities and/or perceived disabilities and/or record of disabilities. As a result of Defendant's unlawful actions, Plaintiff has suffered damages.

## JURISDICTION AND VENUE

2. The foregoing paragraphs are incorporated herein as if set forth in full.

3. This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice.

4. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. Section 1331 because the claims herein arise under laws of the United States, the FMLA and the ADA.

This Court has supplemental jurisdiction over the related state law claims because they arise out of the same circumstances and are based upon a common nucleus of operative fact.

5. Venue is properly laid in this judicial district pursuant to 28 U.S.C. Sections 1391(b)(1) and (b)(2), because Defendant resides in and/or conducts business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth here in occurred in this judicial district.

6. Plaintiff has exhausted all administrative prerequisites to his filing of his instant ADA claims.

## PARTIES

1. The foregoing paragraphs are incorporated herein as if set forth in full.

2. Plaintiff is an adult individual with an address as set forth in the caption.

3. Defendant is a corporation that conducts business within the state of Pennsylvania at the address set forth in the caption.

4. At all times relevant herein, Defendant acted through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment/engagement with Defendant.

## FACTUAL BACKGROUND

5. The foregoing paragraphs are incorporated herein as if set forth in full.

6. Plaintiff suffers from Type II Diabetes (hereinafter his "disability").

7. In or around February 2018, Defendant hired Plaintiff as a Heavy Equipment Operator.

8. Defendant was aware of Plaintiff's disability, as Plaintiff disclosed to his Supervisor, Kerry Miller (hereinafter "Supervisor Miller"), and to his replacement, Kurt Klinger (hereinafter "Operator Klinger"), it upon being hired.

9. On February 11, 2021, Plaintiff sent a text message to Operator Klinger saying he was not feeling well and would be unable to work due to his disability.

10. On February 12, 2021, Plaintiff began experiencing severe pain in his mid-section and sought treatment at the emergency room of an area hospital.

11. Plaintiff's wife, Kelly Blain, informed Operator Klinger of this via text message, noting she wanted to make sure Plaintiff was not having a "heart attack or anything major."

12. Operator Klinger replied, "Ok I hope all is ok."

13. The emergency room physician diagnosed Plaintiff with having an inflamed gallbladder and said Plaintiff would have to undergo surgery to have his gallbladder removed.

14. Plaintiff was sent home with directions to consult with a gallbladder specialist.

15. Plaintiff was not scheduled to work February 13th or 14th.

16. On February 15th, Plaintiff called Operator Klinger and told him he was unable to work as he could not sit or stand without pain.

17. On February 16th, Plaintiff texted Operator Klinger stating he was still experiencing a tremendous amount of pain and discomfort.

18. Plaintiff explained that he had been advised by the emergency room physician to remain out of work until after he had surgery to remove his gallbladder.

19. Plaintiff advised Operator Klinger that he was scheduled to see a surgeon on February 19th.

20. Operator Klinger responded "Ok."

21. Plaintiff met with the surgeon on February 19th, at which time she determined that his gallbladder was inflamed but could likely be salvaged, and so she did not recommend surgery at this point.

22. Plaintiff's surgeon referred him to a gastroenterologist as he was still experiencing pain and was also experiencing bloating in his mid-section.

23. Plaintiff informed Operator Klinger of this.

24. Plaintiff remained on medical leave.

25. In or around late-February 2021, Plaintiff met with a gastroenterologist, who scheduled a hepatobiliary iminodiacetic acid ("HIDA") scan, along with blood tests, to determine the cause of his pain and bloating.

26. Plaintiff continued to update Operator Klinger of this while remaining on medical leave.

27. On March 19, 2021, Operator Klinger requested medical documentation to support his leave, stating that "[he was] being pressured for info."

28. Later that day, Plaintiff's physician emailed a letter to Operator Klinger containing instruction for Plaintiff to remain out of work "pending the results of [an] upcoming procedure [a gastric emptying scan]."

29. Supervisor Klinger texted Plaintiff on March 31st requesting an update.

30. Plaintiff responded that day that he had yet to receive the results.

31. Plaintiff remained on medical leave.

32. On April 12th, Plaintiff was feeling better and advised Supervisor Klinger that he could return to work the following Monday, April 19th.

33. Supervisor Klinger told Plaintiff to bring in a doctor's note clearing him to return to work.

34. Plaintiff contacted his doctor's office and requested such a note; The doctor's office told Plaintiff he would need to be examined by the doctor once more before such a note could be provided, and told him to expect a call back.

35. Plaintiff did not receive a call back and did not receive the note.

36. On April 18th, Plaintiff informed Supervisor Klinger that he had not yet heard from, or received a note from, his doctor's office.

37. On April 18th, Plaintiff learned that the doctor's office forgot to schedule a follow up appointment for him and that the doctor was away for about 2 weeks.

38. Plaintiff promptly informed Supervisor Klinger of this through text message.

39. Supervisor Klinger responded "K."

40. Plaintiff remained on medical leave.

41. On April 21, 2021, Plaintiff received a call from Supervisor Klinger.

42. Although Plaintiff had been out on medical leave for only 10 weeks and intended on returning April 30th once he was able to get a return to work note as requested, Supervisor Klinger fired him.

43. Supervisor Klinger claimed he had been out "too long."

44. At no point during Plaintiff's leave did Defendant advise him of his rights, under the FMLA to job protected time off from work due to his disability.

45. Defendant fired Plaintiff due to his disability and/or due to his request for accommodations for his disability in the form of time medical leave.

46. As a result of Defendant's unlawful actions, Plaintiff has suffered damages.

## COUNT I
### Violations of the Americans With Disabilities Act ("ADA")
**(Discrimination/Retaliation)**

47. The foregoing facts are incorporated herein as if set forth in their entirety.

48. At all times relevant herein, Defendant is and continues to be an "employer" within the meaning of the ADA.

49. At all times relevant herein, Plaintiff was employed by Defendant as an "employee" within the meaning of the ADA.

50. At all times relevant herein, Plaintiff suffered from a "disability" within the meaning of the ADA.

51. The ADA prohibits employers, such as Defendant, from terminating an employee on the basis of disability.

52. Defendant violated Plaintiff's rights under the ADA by firing Plaintiff because he required a medical leave of absence due to his disability.

53. Defendant's actions constitute violations of the ADA.

## COUNT II
### Violations of the ADA
**(Failure to Accommodate)**

54. The foregoing facts are incorporated herein as if set forth in their entirety.

55. Plaintiff requested a reasonable accommodation in that he sought a temporary leave of absence to treat his disability.

56. Defendant could have granted Plaintiff the aforementioned accommodation without undue hardship but failed to do so.

57. Defendant violated the ADA when it failed to provide reasonable accommodations for Plaintiff's disability.

58. Defendant's actions constitute violations of the ADA.

## COUNT III
### Violations of the Family Medical Leave Act ("FMLA")
**(Interference)**

1. The foregoing paragraphs are incorporated herein as if set forth in full.

2. Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. Section 2611(2)(a)(i)(ii).

3. At the time of his relevant medical leave Plaintiff had been employed by Defendant for at least twelve (12) months.

4. Further, Plaintiff had worked at least 1,250 hours for Defendant during the twelve (12) months prior to February 25, 2021.

5. Defendant employed in excess of 50 employees within 75 miles of the location where Plaintiff worked during 2020 and 2021.

6. Plaintiff's disability constituted a serious health condition under the FMLA.

7. Plaintiff was entitled to receive leave for said serious health conditions pursuant to 29 U.S.C. Section 2612 (a)(1), and Defendant was not permitted to retaliated against Plaintiff for exercising his rights under the FMLA.

8. Plaintiff provided notice to Defendant that he suffered from a serious health condition and that he needed to take a leave of absence because of said condition.

9. Defendant interfered with Plaintiff's FMLA rights by failing to designate his absence as FMLA-qualifying.

10. Defendant interfered with Plaintiff's FMLA rights by considering his FMLA-qualifying leave of absence in making the decision to terminate him.

11. Defendant interfered with Plaintiff's FMLA rights by firing him to prevent him from taking further FMLA-qualifying leaves.

12. These actions constitute violations of the FMLA.

## COUNT IV
### Violations of the Pennsylvania Human Relations Act ("PHRA")
### (Discrimination/Retaliation)

13. The foregoing facts are incorporated herein as if set forth in their entirety.

14. At all times relevant herein, Defendant is and continues to be an "employer" within the meaning of the PHRA.

15. At all times relevant herein, Plaintiff was employed by Defendant as an "employee" within the meaning of the PHRA.

16. At all times relevant herein, Plaintiff suffered from a "disability" within the meaning of the ADA.

17. The PHRA prohibits employers, such as Defendant, from terminating an employee on the basis of disability.

18. Defendant violated Plaintiff's rights under the PHRA by firing Plaintiff because he required a medical leave of absence due to his disability.

19. Defendant's actions constitute violations of the PHRA.

## COUNT V
### Violations of the PHRA
### (Failure to Accommodate)

20. The foregoing facts are incorporated herein as if set forth in their entirety.

21. Plaintiff requested a reasonable accommodation in that he sought a temporary leave of absence to treat his disability.

22. Defendant could have granted Plaintiff the aforementioned accommodation without undue hardship but failed to do so.

23. Defendant violated the PHRA when it failed to provide reasonable accommodations for Plaintiff's disability.

24. Defendant's actions constitute violations of the PHRA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to be prohibited from maintaining its illegal policy, practice, or custom of discriminating against employees or prospective employees based on their Disability;

B. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to lost past earnings and future lost earnings;

C. Plaintiff is to be awarded punitive damages in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious, and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be awarded damages for emotional distress and/or pain and suffering and is to be accorded any and all other equitable and legal relief as the Court deems just, proper, and appropriate;

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable law; and

F. Plaintiff's claims are to receive a trial by jury.

Respectfully submitted,

**SWARTZ SWIDLER, LLC**

s/ *Richard S. Swartz*
Richard S. Swartz, Esq.
Joshua S. Boyette, Esq.
Alexa Wissner, Esq.
9 Tanner Street, Suite 101
Haddonfield, NJ 08033
Phone (856) 685-7420
Fax (856) 685-7417

Dated: November 1, 2022